IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
SANTANDER BANK, N.A. f/k/a SOVEREIGN          :
BANK, N.A.,                                    :
                                               :
                        Plaintiff,             :        Civil Action No. 17-cv-4741
                                               :
            -against-                          :        COMPLAINT
                                               :
VANGUARD FUNDING LLC and BRIAN S.              :
OFSIE, Individually,                           :
                                               :
                        Defendants.            :
-------------------------------------------------------------X
```

Plaintiff Santander Bank, N.A. ("Santander" or "the Bank"), formerly known as Sovereign Bank, N.A., f/k/a Sovereign Bank, a federal savings bank, by and through their undersigned counsel, hereby sets forth its Complaint against Defendants Vanguard Funding LLC ("Vanguard") and Vanguard's former President, Brian S. Ofsie ("Ofsie"), and alleges as follows:

## NATURE OF THE CASE

1. In 2011, Plaintiff Santander agreed to open a line of credit for Defendant Vanguard to fund Vanguard's loan origination and acquisition business in exchange for certain repayment and creditor rights, memorialized in a series of agreements. Together, these agreements incorporated various protections for Santander, including a personal guaranty and surety agreement executed by Defendant Ofsie and a first priority security lien and security interest in all of Vanguard's assets.

2. Additionally, under the parties' Mortgage Warehouse Loan and Security Agreement ("the Credit Agreement"), Santander contracted for the right to accelerate, at its election, all of Vanguard's debt and other liabilities owed under the Credit Agreement and related agreements upon the occurrence of an "Event of Default."

1

3.   Following the occurrence of several "Events of Default," Santander accelerated Vanguard's debt and sent Vanguard a "Notice of Default and Demand," dated July 20, 2017 (Ex. 5).  Vanguard has not responded to Santander's demand for payment and other relief, for which now Santander seeks recovery.

## PARTIES

4.   Plaintiff Santander Bank, N.A. ("Santander" or "the Bank") f/k/a Sovereign Bank, a federal savings bank, is a national banking association and a Delaware corporation principally located in Boston, Massachusetts.  Santander is a wholly-owned subsidiary of Santander Holdings USA, Inc. ("Santander Holdings"), a Virginia corporation principally located in Boston, Massachusetts.  Santander Holdings is a wholly-owned subsidiary of Banco Santander, S.A., a Madrid-based banking corporation.

5.   Defendant Vanguard Funding LLC ("Vanguard") is a New York limited liability company principally based in Garden City, New York, and is or was at all relevant times engaged in the business of mortgage lending.  For the purposes of diversity jurisdiction, Vanguard holds the citizenship of its members.  Upon information and belief, Vanguard is owned by an individual member or individual members domiciled in New York, including Ofsie who is domiciled in New York, and none of its members are domiciled in Massachusetts or Delaware.

6.   Defendant Brian S. Ofsie ("Ofsie"), an individual, was at relevant times the President of Vanguard and is, upon information and belief, a resident of Nassau County, New York.  His address is 29 Farm Lane, Roslyn Heights, New York 11577.

## JURISDICTION & VENUE

7.   Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332.

8.   Personal jurisdiction is proper as to both Defendants because Vanguard and Ofsie are residents of Nassau County, New York.

9.   Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

10.  In October 2011, Santander Bank, N.A. f/k/a/ Sovereign Bank ("Santander" or "the Bank") agreed to open a line of credit for Defendant Vanguard Funding LLC ("Vanguard") in the initial maximum

principal amount of $10,000,000, pursuant to, among other things, a Mortgage Warehouse Loan and Security Agreement ("the Credit Agreement") and related exhibits, attached hereto as Exhibit 1; a Suretyship Agreement ("the Suretyship Agreement") attached hereto as Exhibit 2; and an All Assets Security Agreement ("the Security Agreement"), attached hereto as Exhibit 3.

### The Credit Agreement

11.  The Credit Agreement, dated October 18, 2011, was signed by the Bank's Senior Vice President, Ofsie as Vanguard's President, and Ofsie individually as a guarantor.  The Suretyship Agreement, providing that Ofsie would also serve as a surety for Vanguard in his individual capacity, was notarized and signed by Ofsie the same day and was duly executed by the Bank.

12.  Per Section 1.24 of the Credit Agreement, the parties' agreed that the "contract was made under the laws of Massachusetts, and shall be construed and enforced in accordance with and governed by the laws of the Commonwealth of Massachusetts." (Ex 1., p. 25).

13.  Although the parties' initial agreement was for a $10 million revolving credit line, the Credit Agreement provided that the maximum line of credit could be increased by amending Exhibit G to the Credit Agreement (Ex. 1, p. 4).

14.  Following several incremental increases through amendments to Exhibit G and related promissory notes, reflected in Exhibits 9 – 19, the line of credit extended to Vanguard by Santander was ultimately upped to $40 million as of September 3, 2015 (Exs. 17 – 18).  Defendant Ofsie and Beatrice Bohm personally guaranteed Vanguard's obligations under the 2015 amendment (Ex. 17) and accompanying Master Promissory Note (Ex. 18); in September 2016, current Vanguard President Matthew Voss ("Voss") replaced Bohm as a guarantor of the 2015 amendment (Ex. 19).

### *Vanguard's Warranties*

15.  Per the Credit Agreement, an "Obligor" includes a "guarantor or surety of, or any other person obligated in any manner for, any of the indebtedness of [Vanguard] to the Bank[.]"

3

16.  The Credit Agreement contained numerous affirmative and negative covenants binding all Obligors, including Santander, Vanguard, and Ofsie.  Several provisions established affirmative obligations owed by Vanguard, a few of which are detailed below.

17.  Per Section 1.9.11, Vanguard and its Obligors warranted that Vanguard would maintain certain Adjusted Tangible Net Worth, Leverage Ratio, and Liquidity levels, and that it would comply with other financial covenants.

18.  Per Section 1.10.5, Vanguard also agreed to provide any documentation "deem[ed] necessary or desirable to perfect and maintain" Santander's security interests in Vanguard's collateral.

19.  Relatedly, per Sections 1.10.4 and 1.10.7, Vanguard agreed to allow Santander to inspect its books and records "at any time . . . during normal business hours," and to "cooperate at all times" through its officers, directors, and employees.

20.  Breach of these covenants and others could result in an "Event of Default" under the Credit Agreement.

*Events of Default*

21.  Specifically, Section 1.15 provides that one or more of the following events, among others, shall constitute an "Event of Default" (Ex. 1, § 1.15):

    (a)  failure of the Borrower to pay any sum when due under the Master Promissory Note or this Agreement;

    (b)  failure of any Obligor to perform any agreement, covenant, or other undertaking under this Agreement, the Security Agreement or related to the loan evidenced by the Master Promissory Note;
    . . .

    (e)  a Governmental Authority issues a cease and desist order or its equivalent against the Borrower, any Affiliate of the Borrower . . .
    . . .

    (m) the failure to make any payment or other default on any other indebtedness owing by any Obligor or any Affiliate of the Bank;
    . . .

    (u)  any other default, breach or other lack of compliance with the terms and conditions of this Agreement, the Security Agreement or any other agreement, document or instrument now or

in the future executed in connection with this Agreement beyond any applicable notice and cure period . . .

22. Pursuant to Section 1.16, "upon the occurrence of an Event of Default, . . . all indebtedness of the Borrower to the Bank (whether under this Agreement or otherwise) shall, at the absolute option of the Bank, become immediately due and payable[.]"  Additionally, Section 1.6.8 provides that the "entire amount of principal of each individual Advance under the Line of Credit, and all fees and interest accrued thereon, shall be payable . . .[upon] [d]emand for payment of all sums owing under or in connection with Agreement made by the Bank at any time after the occurrence of Event of Default."

23. On July 11, 2017, and July 12, 2017, a representative from Santander and a third party field auditor retained by Santander met with Voss at Vanguard's offices in Nassau County, New York, for the purpose of inspecting Vanguard's books and records, as it is permitted to do under Section 1.10.4 of the Credit Agreement.

24. Vanguard's office was closed; no employees were present, except for Voss; and Santander's representatives were unable to locate any physical records at the premises, except for a few electronic records that Voss printed out.

25. As of July 20, 2017, Santander declared Vanguard's debt "immediately due and payable." (Ex. 5).  To date, Vanguard has not remitted any payment to Santander or otherwise acknowledged its demand.

26. On July 21, 2017, Santander again attempted to inspect accounting records at Vanguard's offices; however, Santander was again unable to find any physical books or records.  Voss agreed to meet with Santander's representatives on July 24, 2017, purportedly to provide Santander with the information it requested, however, Voss did not appear for the appointment and has made no further contact with Santander.

27. Santander sent an additional default notice to Ofsie, Voss, and Bohm at their home addresses on July 28, 2017 (Ex. 6).  Santander received no response from any of these individuals.

28. Over a month prior, on or about June 12, 2017, the New York Department of Financial Services issued a Cease and Desist Order to Vanguard (Ex. 7), and as of that date, Vanguard is not in Good

Standing with the Department, a "Governmental Authority" as defined by the Credit Agreement (Ex 1., p. 3).

29.  Upon information and belief, and based on management-prepared financial statements kept in the bank's credit file, Vanguard failed to maintain the following financial covenants as required by the Credit Agreement based on evidence in its fourth quarter of 2016 and first quarter of 2017 statements.

(a)  Vanguard was required to maintain a Minimum Adjusted Tangible Net Worth of $3,500,000; Vanguard's Tangible Net Worth was $2,046,000 as of December 31, 2016.

(b)  Vanguard was required to maintain a Maximum Leverage Ratio of fifteen-to-one, however, Vanguard's Leverage Ratio was ten-to-one as of December 31, 2016.

(c)  Vanguard was required to maintain a Minimum Liquidity of $1,500,000; as of December 31, 2016, Vanguard's Liquidity was $1,137,000, and as of March 31, 2017, it was $1,392,000.

## The Suretyship Agreement

30.  In addition to executing the Credit Agreement which reflected Ofsie's personal guaranty, Santander also entered into a Suretyship Agreement with Ofsie, dated October 18, 2011, providing that Ofsie would be Vanguard's surety and individually responsible for "the indebtedness, obligations and liabilities" of Vanguard owed to Santander under the Credit Agreement and related agreements (Ex. 2).

31.  In the Suretyship Agreement, Ofsie took responsibility for ensuring Vanguard's compliance with Vanguard's warranties and obligations under the Credit Agreement and related agreements, and that, in relevant part, Ofsie would be responsible for "all costs and expenses incurred by the Bank in seeking to enforce the Bank's rights and remedies . . . , including court costs and reasonable attorney's fees, whether or not suit is filed[.]" (Ex. 2).

32.  Like the Credit Agreement, the Suretyship Agreement also provided a number of events constituting an "Event of Default," including when "(i) An Event of Default occurs under the [Credit] Agreement . . . ." (Ex. 2, § 5(a)).

33.  Upon an "Event of Default" under the Credit Agreement (and therefore the Suretyship Agreement), Santander contracted with Ofsie for the right to "recover from the Surety the full amount of

any liability[.]" (Ex. 2, p. 5).  The Suretyship Agreement also provided that Santander may recover from Ofsie all amounts it is entitled to from Vanguard, without first seeking recovery from Vanguard.

### The Power of Attorney

34.  Upon information and belief, in conjunction with the Credit Agreement's execution in 2011, a power of attorney was to be executed by Vanguard, appointing Sovereign Bank, N.A. its attorney-in-fact. (Ex. 1, Ex. D).

35.  On or about October 17, 2013, Vanguard executed a power of attorney in Santander's name, in conjunction with the bank's name change from Sovereign to Santander, granting Santander broad powers to act on Vanguard's behalf (Ex. 4).

36.  Specifically, Vanguard granted Santander the power to sign Vanguard's name "wherever appropriate to any power granted by the [Credit] Agreement."

37.  Under the Credit Agreement, Vanguard granted Santander a first priority security interest in "[a]ll of [Vanguard's] present and future accounts, [and] . . . deposit accounts[.]" (Ex. 1, p. 12).  Also, a security interest was created in favor of Santander in:

> [a]ll escrows, deposits, and other monies or consideration received by or on behalf of the Borrower with respect to each Eligible Mortgage Loan funded, in whole or in part with an Advance under this Line of Credit, including escrows for insurance, taxes and interest and payments made under the Eligible Mortgage Loan by the mortgagor.

(Ex. 1, p. 11).  Additionally, the Credit Agreement and Security Agreement grant Santander "all right, title and interest in and to the Mortgages and other instruments securing the payment of indebtedness evidenced by the Mortgage Notes, including all escrows included thereunder[.]" (Ex 1, p. 11).

38.  Further, as explained in the parties' Security Agreement, Vanguard contracted to allow Santander to "take such actions as the Bank may deem necessary or advisable to preserve, process, develop, maintain, protect, care for or insure the collateral or any portion thereto, and the undersigned irrevocably authorizes and appoints the Bank as its attorney-in-fact to do all acts and things in connection therewith[.]" (Ex. 3, § 8(h)).

## COUNT ONE: BREACH OF CONTRACT
### Against Defendant Vanguard

39.  Plaintiff Santander incorporates the allegations in Paragraphs 1 – 38 of this Complaint as if set forth fully herein.

40.  The Credit Agreement, the Suretyship Agreement, and the Security Agreement, and the related agreements contained therein, are valid and binding contracts, entered into for valid consideration.

41.  Santander has fully performed its obligations under these agreements, and specifically, under the Credit Agreement.

42.  Upon information and belief, Vanguard has materially breached Section 1.9.1 of the Credit Agreement by failing to pay its debts, dues, and costs owed when due, and by failing to perform or otherwise comply with its obligations and covenants under the parties' agreement.

43.  Upon information and belief, Vanguard has also materially breached the Credit Agreement under Section 1.6.8, under which Vanguard agreed that "[t]he entire principal amount of each individual Advance under the Line of Credit, and all fees and interest accrued thereon, shall be payable . . . [when] [d]emand for payment is made of all sums owing under or in connection with this Agreement by the Bank at any time after the occurrence of Event of Default."

44.  As a direct and proximate result of Vanguard's breach, Santander has suffered, and continues to suffer, damages in an amount to be proven at the time of trial, but more than $75,000, as well as attorneys' fees, expenses, and other costs Santander intends to recover pursuant to Section 1.26 of the parties' Credit Agreement.

45.  Defendant Ofsie is directly liable as Vanguard's guarantor and surety for any debts and liabilities of Vanguard under the parties' agreements.

## COUNT TWO: BREACH OF CONTRACT
### Against Defendant Vanguard

46.  Plaintiff Santander incorporates the allegations in Paragraphs 1 – 45 of this Complaint as if set forth fully herein.

47.  The Credit Agreement is a valid and binding contract, entered into for valid consideration.

8

48.  Santander has fully performed its obligations under these agreements.

49.  Upon information and belief, Vanguard has breached several of its affirmative covenants under the Credit Agreement.

50.  Specifically, upon information and belief, and financial statements Santander obtained from Vanguard for the fourth quarter of 2016 and first quarter of 2017, Vanguard has defaulted with respect to several financial covenants under the parties' Credit Agreement.

51.  Vanguard breached Section 1.9.11 of the Credit Agreement by failing to maintain its Adjusted Tangible Net Worth above the Minimum Adjusted Net Worth Threshold, as of December 31, 2016.

52.  Vanguard also breached Section 1.9.11 of the Credit Agreement by failing to keep its Leverage Ratio below the Maximum Leverage Ratio, as of December 31, 2016.

53.  In addition, Vanguard has breached Section 1.9.11 of the Credit Agreement by failing to ensure its liquidity meets or exceeds the Minimum Liquidity Threshold as of December 31, 2016, and Vanguard has continued to remain in default of this covenant as of March 31, 2017.

54.  As a direct result of Vanguard's breaches, Santander has suffered, and continues to suffer, damages in an amount to be proven at the time of trial, but more than $75,000, and attorneys' fees, expenses, and other costs pursuant to Section 1.26 of the parties' Credit Agreement.

55.  Defendant Ofsie is directly liable to Santander as Vanguard's guarantor and surety for any debts and liabilities of Vanguard under the parties' agreements.

## COUNT THREE: BREACH OF CONTRACT
### All Defendants

56.  Plaintiff Santander incorporates the allegations in Paragraphs 1 – 55 of this Complaint as if set forth fully herein.

57.  The Suretyship Agreement is a valid and binding contract, entered into for valid consideration.

58.  Santander has fully performed its obligations under these agreements.

59.  Ofsie agreed to be liable for "the indebtedness, obligations and liabilities" of Vanguard owed to Santander under the Credit Agreement and related agreements (Ex. 2).

60.  Ofsie also agreed to ensure Vanguard's compliance with Vanguard's warranties and obligations under the Credit Agreement and related agreements.

61.  Further, Ofsie agreed to be responsible for "all costs and expenses incurred by the Bank in seeking to enforce the Bank's rights and remedies . . . , including court costs and reasonable attorney's fees, whether or not suit is filed[.]" (Ex. 2).

62.  Ofsie has breached the Suretyship Agreement by failing to ensure Vanguard's compliance with the terms of the Credit Agreement.

63.  As a direct result of Ofsie's breaches, Santander has suffered, and continues to suffer, damages in an amount to be proven at the time of trial, but more than $75,000, and attorneys' fees, expenses, and other costs pursuant to Section 1.26 of the parties' Credit Agreement and the Suretyship Agreement.

64.  Under his obligations as Vanguard's guarantor under the Credit Agreement and its related agreements, as well as his obligations under the Suretyship Agreement, Ofsie is directly and individually liable for all damages, debts, and liabilities owed by Vanguard to Santander.

**COUNT FOUR: INFORMATION REQUEST – SPECIFIC PERFORMANCE**
All Defendants

65.  Plaintiff Santander incorporates the allegations in Paragraphs 1 – 64 of this Complaint as if set forth fully herein.

66.  The Credit Agreement is a valid and binding contract, entered into for valid consideration.

67.  Santander has fully performed its obligations under these agreements.

68.  Upon information and belief, Vanguard breached its duty to cooperate with Santander by refusing to provide documentation that Santander is entitled to in violation of Sections 1.10.5 and 1.10.7 of the Credit Agreement.

69.  Upon information and belief, Vanguard further breached the Credit Agreement by failing to maintain and/or by refusing to allow Santander to inspect its books and records, in violation of Section 1.10.4 and Section 1.10.5.

70.  Upon information and belief, Vanguard's guarantor and surety, Ofsie, has failed to ensure Vanguard complies with its warranties under the Credit Agreement and related agreements, including Santander's demand for inspection rights.

71.  Due to Vanguard and Ofsie's breaches under the Credit Agreement and related agreements, and its refusal to cooperate or otherwise communicate with Santander, Santander has been unable to locate the financial information and other books and records for Vanguard that it is entitled to inspect under the Credit Agreement, and as a result, Santander is also unable to locate the collateral needed to enforce its security interests in Vanguard's assets.

72.  As a direct result of Vanguard's breaches, Santander has suffered, and continues to suffer harm, and respectfully requests that this Court grant specific performance to it, ordering Vanguard to supply copies of or to permit Santander to inspect its books and records and other documents that may be needed to maintain or perfect its security interests in Vanguard's collateral.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief from this Court as follows:

A.  Actual damages, in an amount to be determined at trial, but more than $75,000;

B.  An order granting specific performance pursuant to Santander's inspection and access rights under Section 1.10.4 and 1.10.5 of the Credit Agreement;

C.  Pre-judgment and post-judgment interest on such monetary relief;

D.  The costs of bringing this suit, including reasonable attorneys' fees; and

E.  All other relief to which Plaintiffs may be entitled at law or equity.


This 13th day of August, 2017.


[signature page to follow]

ALSTON & BIRD, LLP


/s/ Farah Lisa Sebti

John P. Doherty
N.Y. Bar. No.: 2817328
90 Park Avenue
New York, New York 10016-1387
Phone: (212) 210-9547
Fax:  (212) 210-9400
john.doherty@alston.com

Farah Lisa Sebti
N.Y. Bar. No.: 4928354
4721 Emperor Blvd., Suite 400
Durham, NC 27703
farahlisa.sebti@alston.com
Phone: (919) 862-2280
Fax: (919) 862-2260

*Counsel for Plaintiff Santander Bank, N.A.*